Melissa Compere v. Nusret Miami Lowell Kuven for the appellants Jonathan Beckerman for the appellees Mr. Kuvin, you can proceed when you are ready. Yes, good afternoon. My name is Lowell Kuven and I represent the appellants who are 24 food servers and other front of the house employees who were paid no hourly wages by their employer. The court, there are basically three issues. Two of the issues are relatively very closely associated with each other and had to do with timing and discovery issues. The third issue is that the trial court erred when it granted summary judgment for the employer in this particular case. It seems to me that there may have been some inappropriate run around on discovery, but is whether these were reported as gross receipts on tax forms truly a dispositive question? Yes, Your Honor, and it is. And the lower courts have looked at this issue very many times, especially in Judge Dimitri Aleas' decision, which is in our brief. And they said that if you don't count the service charges as part of your gross receipts, meaning on your tax returns, then basically you have not taken possession of those. When you say meaning on your tax returns, though, I think that language isn't in the regulation that you're basing your argument on. Where do we get the meaning on your tax returns as a necessary part of that? Yes, Your Honor, and it comes from the term bonafide commission. So if Your Honor were to go into a restaurant on New Year's Eve and to reserve a table and they charged you a $100 fee for that particular table, that would belong to them. That would be a commission for them. That would be a service charge. And they have to take possession of it. And it has to become their responsibility. Now, they can use that money and redistribute it back to the employees in the form of wages. But the problem that we have here is that if you don't take possession of it, if you don't make it your own, if you don't put it on your tax returns, then it never really belonged to you and it's actually a tip. I was following you until you got to the tax returns part because the cases that you're citing in the district court, from what I can tell, are cases where there are cash tips given directly to employees. And then the question was, did the employer ever report that on their tax returns, right? Did the employer ever actually take that money and make it their own? Whereas here, I mean, correct me if I'm wrong, but I thought the service charges were just included on the bill. So, you know, when you paid for the food, your money, you know, just went to the business. There was never any separate thing that you gave to the waitress or waiter. Well, actually, it was promised to the servers that they would be paid with this. And remember, this is – Yeah, but I guess my point is, so like, some of those cases where the court said it was really important to find out whether the employer reported the money on their own tax forms, those cases were like in a strip club, for example, where the employees were receiving cash tips directly and the employer was saying those are service charges, right? And then the question was, did you ever report those? Here, was there any exchange of money directly from the customer to the waiter or waitress that wasn't just part of their overall bill that they paid to the restaurant? Well, I'm not certain really what Your Honor is saying, but I – Well, just to answer that factual question, when you paid the bill at the restaurant, was there any money that went to the waiter separately from the money that just paid the bill? Yes. Yes. There were tips also that went to the server. For the service charge. If you get tips, that's a different issue, but I'm saying the service charge that we're talking about here, that was included with the bill and just went directly to the restaurant, right? That is correct. Okay. So why do we care whether they reported that on their taxes or not? Because we know that they took possession of it. In all these other cases, there was a question about whether they took possession of it. Here we know that they took possession of it, right? And Your Honor, in order to take possession of it, but see what's happening is there's a scheme here. And I come from the restaurant industry. I was a waiter, worked in restaurants for 25 years, manager and everything else. And then I went to law school and when we see these types of cases, there's a scheme. And the reason that there's a scheme is because the restaurant business is such a difficult business that in order to make it so that you can make more profits, and that's what we're looking at here is, and this is what's happening. So I think Your Honors will agree that the restaurant is not allowed to keep tips that are earned by the server. We know that Donald Trump signed the omnibus funding bill that said that specifically that tips belong to the person who earned them. And that was a very long-going argument with DOL and in the Ninth Circuit. However, that's exactly what's kind of happening here a little bit. And so it's advantageous for the restaurant to collect a service charge. Say it's mandatory. We argue that it was not mandatory in this case and that we have submitted bills that show that it was taken off. And what they do is they take it, they call it a service charge, they collect it, and then they turn it into a tip. And then they give it back to the server. I mean, I guess that's the thing. They don't seem to turn it into a tip so much as they just use it to pay the waiter and waitresses, right? Exactly, Your Honor. And how is this different? I mean, so I appreciate that you're coming from the restaurant industry and this is a restaurant case, but I mean, how is this any different than telling a salesperson at, you know, a car dealership, you're going to make 15 percent of the total volume of cars that you sell? You know, that's all we're going to pay you, 15 percent. And I would agree with you, Your Honor. However, they, that 15 percent belongs to the employer before he can use it to satisfy his wage obligation to the employee. Aren't you just really alleging that they might have a tax problem? Like, isn't this up to the IRS to determine whether they've taken possession? And why aren't we just taking at face value that the receipt at the restaurant says this is a flat 18 percent service charge, that, you know, the customer doesn't have a choice on that, that's just what it is, it's not a tip, and we would follow the Fourth Circuit and why man Tom V. Hospitality Ventures and say it's not a tip? The gross receipts, why is this not just an IRS problem? Well, it's not an IRS problem, Your Honor, because the restaurant didn't pay them any wages. So they'd got zero per hour from the wages. So in the district court's decision, he stated the minimum wage was $7.25, that's the federal minimum wage. But the restaurant was not paying them any hourly wages. No, I know. They were proceeding under the labor regulation that allows them in a, they're saying it's not a tip, it's a service charge, that they can do the payment of their workers in this fashion. And you're pointing to a reference in another one of the regulations that mentions gross receipts, and we're trying to get an understanding of why you're saying they have to, the gross receipts show that the restaurant took possession of this. We need to know that they took possession, because they're, if they didn't, they're avoiding other tax liability. So my question is why isn't the, whether, how much they took possession of this, why doesn't that turn into an IRS issue that they have to worry about? But they're following the labor regulations as far as they have made this a service charge, it's not a tip. Well, part of the definition of a bonafide commission means that you have to take possession of it, meaning the liability of it on your taxes. That's part of the definition of bonafide. I just want to make sure, I think I'm now understanding your position on this. So, I go and I buy a new car, and I write a check to the dealership for, you know, $35,000. I hand that check to the dealership, and the dealership says, you know, I'm going to give 10% of this to the salesperson, and then they write a check of $3,500 to the salesperson, that unless the dealer puts that on their tax forms, they never took possession of that, and it's a tip. That's your position. It is, and I'll tell you why it's so important that they have to take possession of it, is because when taxes, service charges that you take possession of and put on your taxes are treated differently than tips. So when a tip travels directly from a customer to an employee, such as $5 on the table, $15 on the charge, whatever it may be, it's treated differently. It's only a very small portion of that is treated as wages. The rest of it is a gratuity, and so the restaurant is not responsible for making other contributions, such as Social Security contributions for the tip money, as well as unemployment compensation that they are required to pay to the government. So what we have is that somebody gets a service charge, takes it, turns it into a tip, and then uses it to satisfy their entire wage requirements, and we actually see this in this case in the POS reports, and so the citation for this is tab 93 at Appellant's appendix on page 17 of 35, as well as... Well, and that was going to be my question. You want the tax returns, but you were given, you conducted extensive discovery. You have the finances of this restaurant. Why are the financial documents that you have, why don't they show, why don't they speak to this issue? The reason they don't show it, Your Honor, and most of the time when I'm here, I'm sitting on this side and I'm representing the restaurant, but today I'm on this side, and the reason is is because when you know that you didn't follow the law, when you didn't include it in your gross receipts for your tax reporting purposes, you know you can avail yourself of the 207-I exemption, and the 207-I exemption allows you to pay your employees nothing. Right, but what I'm saying is why the financial, if you have the financial documents for this restaurant, you're telling me that there is no indication of whether or not this went into the gross receipts? There was no indication in the record that was submitted to the district court that showed that they were including it in their gross receipts for tax purposes. That is correct, and as a matter of fact, Your Honor, they admitted later on that they did not include it in their gross receipts. We had several meetings or hearings, discovery hearings in front of Magistrate Judge McAlily, and she asked specifically, Mr. Beckerman, can you tell us if they included it in your gross receipts? And he refused to answer that question, and so this whole thing, if they had just said it from the very beginning, would have been then submitted to the district court, but the district court never had that. It was their burden at the summary judgment stage to prove, by clear and convincing evidence, because it's an exemption, to show that they included it in their gross receipts. All right, I'm actually, we've taken, oh. We have, although I do have one more question, just to make sure I understand. So the employees are, the employees have been paid this 18% as their wages, is that correct? The 2079 exemption allows a restaurant to take an overtime exemption and not have to pay someone the one and a half percent wage. No, no, I'm asking specifically, this 18% that the restaurant collected, that went to the employees, correct? No, that was the restaurants when they collected it. And they're allowed to use that to, they're allowed to use that for any purpose that they want to. They can pay managers with it, which is normally something you're not allowed to do with tips. They're allowed to pay back of the house staff that have no contact with the guests, which is something that is prohibited by law under the FLSA. They're allowed to use it in any way that they want to use it. But what they were using it for was to pay the minimum wage and the overtime hours for the employees. So that's my question, though. Did the restaurant use this 18%? Whether they were allowed to or not, or whether they categorized it correctly or not, did they use this 18% to pay the employees? Yes, they did. And interestingly enough, Your Honor, on that point, they said that they Why would you charge a service charge and return it all back to the employee when you can keep a portion of it for yourself? I've never, I actually institute this 207I exemption in restaurants throughout South Florida, and I have never had a client that ever did that. What they do is they keep a percentage for themselves and then return the rest back. The reason that they were doing that was because they didn't, my belief is, the reason they were doing that is they didn't want to run into an issue where if they got caught, that they could just call it tips. But they still have a problem because they were not just giving it to waitstaff, they were giving it to back of the restaurant folks who could not otherwise earn a tip, correct? Yes, Your Honor. We allege that they were also sharing it with kitchen staff, such as people who were polishers or people who were working primarily only in the kitchen. And so that would be a violation if it was a tip. Okay. And so we have taken you, you've got a lot of time left for rebuttal. I'm sorry. No, that's all right. We took you there. We pulled you into nine minutes. So Mr. Beckerman, you have 15 minutes. Thank you, Judges. Jonathan Beckerman on behalf of Newstripe Miami LLC. You're absolutely correct that appellants in this case are taking and they're trying to insert elements into the evaluation of whether the 207I exemption applies. This court should take a purely textualist approach to that. I have a different question and we'll get back to those arguments because I do think they're important. But as a former litigator, why in the world could the restaurant not just say, here's how we treated this money for tax purposes? I mean, the discovery process is supposed to give everyone the information that they say they need that is relevant to the case. That is not a hard question. I believe that question was answered in the briefing and through the corporate representative's position testimony, he identified that one of the concerns that the appellants had was whether or not we were paying taxes, obviously, whether it was gross receipts, and whether this ultimately becomes a tax issue or a legal issue in the employment context. The corporate rep testified that they were a conduit. And under Florida law, that provides that when we collect the revenue, it goes under gross receipts. That's part of the POS reports that were produced to opposing counsel. Great deal of financial information. It shows clearly that it was a gross receipt collected on behalf of the guest and paid back to the service staff. Now, under Florida law- So he's saying, but when I asked him the same question about the financial documents that you did produce, he's saying that has no indication of gross receipts on there. Absolutely does. The POS report shows it daily and, in fact, weekly reports identifies per day how much exactly is collected by service charges. And the reason why- Yes, but it doesn't say whether it was reported as gross receipts on your taxes. But that's not an element that's required under the law. There's nothing in any of the tax regulations that- I mean, whether it is or not, the question is, why in the world? If it's not relevant, then why do you care if you show it? Well, we did show it in some respects, Your Honor, because- In all respects. If it's not relevant to the question, you say it doesn't matter, why can't you just produce it and let them know and say, here's what it is, but it doesn't matter for these 10 reasons? Well, at the time, Your Honor, we were considering all the various options. And we disclosed through the discovery process that although it was collected as gross receipts, it was passed through to the appellants 100%, less a 2.65% processing fee for credit cards, which is perfectly permissible. So in terms of whether or not it was recorded as a gross receipt for tax reporting purposes, that is on its 1040s, is irrelevant because 100% of it is passed through. And Florida law provides that if you are serving as a conduit between the guest and the service staff who earned the service charges, that is not in any way, shape or form reportable as income. Yes. I mean, correct me if I'm wrong, but I mean, the reason I wouldn't want to give the person who is suing me my tax information is I wouldn't want to give the person who is suing me my tax information, right? I mean, that's the reason, right? I mean, they're suing you for money. You don't want to give them all the information that they would need to get your money, right? You raise a very good point. But on top of that, there's nothing that says in- I can't find a single case, nothing cited in any of the briefing that was litigated at the district court or before this honorable court that says that it has to be reported twice for either on your 1040 or it has to be reported as gross receipts on daily financials. There's nothing that says that. So it's not a required obligation. But in our opinion, we did satisfy all the relevant tests by disclosing the financial information from the accountant, from the accounting firm, Proprietary Chase, in our internal financials that show it clearly was recorded as gross receipts. And here's another issue, though. You had your corporate representative for the deposition, Soy Turk, the director of finance, who is asked about the gross receipts and apparently from what I can tell, does not understand the term gross receipts. So why isn't that if you- this is your corporate representative set for a deposition. If this person is unable to answer a very basic financial question, and I understand we're in a pandemic and I think the paper chase deposition doesn't happen, but why shouldn't that deposition have happened? The paper chase deposition? Mm-hmm. Because all- well, number one, putting aside the fact that the deposition- the deposition was set. It was ordered by the court. We made the accountant completely available. We produced the financials. We, in every relevant respect, complied with the order. Appellants just simply chose not to adapt. They chose not to set him for a telephonic hearing or excuse me, a telephonic deposition. And I'll note that even before this occurred, the court, Judge Singal, the district court judge, in fact, started ordering remote proceedings to occur, which should have given them an indication that this was the new normal that they needed to adapt to. Now, in terms of the corporate representative, what is not reflected perhaps in their briefs or could have been reflected better in ours is the game of gotcha that opposing counsel was playing during that deposition. Mr. Soy Turk is a very well and experienced financial person. He's an executive with an organization. He's responsible for multiple locations. During that deposition, opposing counsel was going back and forth, changing the constant definitions of gross receipts. Mr. Soy Turk asked them, well, gross receipts in terms of what? And the definition was vacillating and changing. What's more important that Your Honor should consider is that under Local Rule 7.1, appellants have 30 days to raise a discovery dispute as to that testimony. There was discovery disputes and hearings that were conducted after that testimony. Not once did opposing counsel or the appellants raise this issue of deficiency with Mr. Soy Turk. If they thought that they could have gotten better information from him, better testimony, they had every obligation to appeal to the district court judge or the magistrate judge. That simply never happened here. So the only place I see in the text, you wanted to talk about the text, the only place I see anything about gross receipts in the text, is in this regulation, 29 C.F.R. Section 531.55B that says examples of amounts not received as tips, and it says service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the act. Is there anywhere else, or I guess two questions about that. One, is there anywhere else where gross receipts are sort of linked to this issue of service charges versus tips, and if there's not, why isn't it appropriate for us to read that regulation as linking those two things and saying, look, if you don't have it on your gross receipts, then it's not a, you can't benefit from this exemption? I don't see it anywhere else in the text that there's got to be a link in any way, shape, or form between the application of the exemption and the treatment of taxes or service charges with further tax treatment. I think what's very instructive and important for us to recognize here is Judge Skoll has a very well-reasoned opinion in the MLB Hotel case. There he said that if you look at the plain regulation itself, if you look at the 207I exemption, it provides for only two requirements, one and a half times the applicable minimum wage for every hour worked, and that more than 50 percent of the commissions or wages are earned by way of commissions. That's exactly what happened here, and as Judge Brasher aptly noted in the car dealership example, everything that they received was a percentage of sales, and by the way, the lead plaintiff in this case was earning in excess annualized of $100,000 based on those distributions of those service charges. Those service charges have deductions taken from them for FICA, for Medicare, for all applicable federal withholding taxes and local. When we look at this, these are examples, and we are not proceeding under example B of what could potentially serve as a service charge. We are focusing on example A, and that reads a compulsory charge for service, such as a 15 percent of amount of a bill imposed on a customer by an employer's establishment is not a tip, and even if distributed by the employer to its employees cannot be counted as a tip. That's the relevant text from that section, Your Honor, and as Your Honors aptly noted at the beginning of Mr. Kuvin's presentation, all of the cases that he cites in favor of this improper application of reading of gross receipts and taxation issues comes from adult entertainment venue cases where there's independent contractors receiving cash directly from customers. Each one of those cases states specifically that that was an improper application of a service charge because it deprives them, the dancers in those cases, of their retirement benefits. So let's say, hypothetically, a different business, not this one, took in a mandatory service fee and paid their employees wages out of that service fee but did not report that money on their taxes. That would be, in your view, a tax fraud problem rather than an employment litigation problem, right? I absolutely agree. Here, I don't think that we have that problem because the record shows, like I said, we Don't worry, I'm not asking you to confess to tax fraud on behalf of your client. Hypothetical. Hypothetically speaking, if there was an improper distribution or improper reporting, that would be a tax issue. It would have nothing to do with the exemption itself. All that would create is an issue of whether or not there was a reporting issue, whether or not there was an improper distribution or recording. That's not the case here. It's simply a red herring that the plaintiff's bar has been trying to insert and inject these elements into a non-existent application of the 207-I exemption. I don't believe in any way, shape or form that improper tax reporting issues would result in a violation here under FLSA jurisprudence. So should we be following the Fourth Circuit and why man Tom, the hospitality ventures, even though they didn't reference the gross receipts issue? Well, I agree. I think that Your Honor should follow why man Tom. I think that Your Honor should also take the guidance, or excuse me, the opinion in the MLB hotel case. I think that appropriately sets forth the legal analysis in a very well-reasoned manner. It shows exactly why it's not relevant, why the textualist approach is the correct approach. And if Your Honors would like me to move on to the, in my mind, I view this appeal as involving two different issues, the substantive legal issue, which I think we've just thoroughly addressed, and then the procedural issues. If Your Honors would like, I can provide some argument as to that aspect of it in terms of the motion for extension of time and the Rule 5016 motion. However, you would like to proceed. Thank you, Your Honor. Well, with the remaining time, I would like to address that briefly and essentially provide that the existence of the paper chase accountant was made known to appellants almost at the inception of this lawsuit. When we look at the procedural record, paper chase was disclosed by way of our interrogatory responses, by way of Docket Entry 157 of the 2019. Between May of 2019 and the last day of the originally set discovery period, we have not only the paper chase being disclosed by way of interrogatories, but we have the corporate representative's deposition testimony. He disclosed the existence once again of paper chase. During that initial nine-month period, we had two plaintiffs, excuse me, plaintiffs took two depositions, Chef Nusrat Goce and our corporate representative. We took 19 depositions of the opt-in plaintiffs. There were two discovery hearings. There was no objections on the corporate rep deposition, just as I mentioned. The accountant deposition of paper chase was not requested in any way, shape, or form. This is a different case. If they had objected that the corporate representative you put up was inadequate to answer the questions they wanted to pose to the corporation, correct? I believe we'd be arguing different issues here. I also think that the way that we've first kind of negates all of the procedural issues. I think it makes that a nullity. It makes it irrelevant for our purposes here. Because as we are arguing here today, the taxation issue, the gross receipts, that becomes irrelevant. There is no need to— Well, it's a nullity if we agree with it. If you agree, of course. Absolutely. In that case, they made no issues. They made no efforts. If we look at the Cordero case that's cited in the briefs on the Rule 56D, that provided in a case where there was still discovery, the deadline for discovery was still pending, but yet the court in that case clearly provided that if you had known about the existence of certain facts or evidence that could be gleaned by specific witnesses early in the litigation and you take no action for months, when the other side files a motion for summary judgment, you risk at your peril your dilatory response to having taken that information and done nothing with it. That's a very different case than what we have here because we don't even see paper chase, even though they were disclosed at the inception of the—basically the inception of the litigation of discovery. We see appellants doing absolutely zero with that information until after the discovery period had already been extended. At that point, we see a flurry of litigation towards the end of the litigation in this case where we see that appellants are now trying to create this firestorm. We're trying to see them create a factual record of having tried to obtain this information, but yet when the pandemic hit by way of May 12th, we already see that, and that was the discovery hearing I was referring to previously where Judge McAloy ordered the parties to attend remotely. This was well in advance of the timeframe by which paper chase could have been deposed. They did nothing with that information. Your Honors, it's very important to just clarify on the record we're not claiming a tip credit here. I think there was some confusion over whether or not we are claiming a tip credit, whether we are trying to assert any indication or anything related to the application of the cash tips. That's not an issue before, Your Honors. We're only here to talk about service charges. We never asserted, or excuse me, the tip credit issue is not before us today. Simply put, the 207 exemption has a very, very straightforward approach. It has a two-factor test. Those factors were clearly identified as being satisfied for the reasons in the brief. Counsel states that our service staff didn't receive any tip credit. That's not true. If you look at the Statement of Undisputed Facts, I believe that's 173 of the lower court's record, it shows that most of these folks were receiving tens of thousands of dollars per year, some close to $100,000 per year. They were receiving them by way of commission, a percentage of the ultimate sales for everything that was charged in the restaurant. That clearly shows that it is exempted from the regular rate under 207. For the appellants to suggest that they were paid nothing for their service is they're doing wages and taxes W-2-ish than they reported on their 1040s, which is also part of the record. Thank you, Your Honors. Thank you, Mr. Beckerman. All right, Mr. Kuvin, you have reserved 10 minutes for rebuttal. Since you've got a good bit of time, I'll just ask you to, the question I have is where is the textual requirement that this exemption requires a reporting requirement? On the tax form, where does that come from? Yes, Your Honor, that comes from the IRS circulars. It comes from the case law in point that talks about if it's a bonafide commission or not. And a bonafide commission would be one that is charged by the House, not for the benefit of somebody else, but for the benefit of themselves. And so when we look at the Tom versus Hospi Ventures case, the Fourth Circuit rejected a similar argument and affirmed summary judgment in favor of the dependent employer on the issue. However, that case can be easily distinguished and the reason being so is that, and what's missing from their brief, is how much were the employees paid per hour or were they paid anything per hour? That's the issue here today. And he also brought up the Christy Nelson case, which has been briefed and is before this court soon for oral argument. In the Nelson, I'll give you the citation for it, it's Nelson versus MLB Hotel Manager, and it's the Eleventh Circuit appellate case 21-10181. And the Nelson case is very different from this case, and I'll tell you why, because there the employer paid their employee out of their own money, basically, out of the restaurant's money. They paid her an hourly wage, they were paying her $10 an hour at one point, and at another point they were paying her a reduced minimum wage with a tip credit. So that can be easily distinguished from what's happening here today, and the only money that the appellants were paid in this particular case was with the money, the commissions, that they basically earned. But if the restaurant doesn't own that money, if it doesn't become their possession, then how can they use it to satisfy their minimum wage obligation? Mr. Beckerman's case would be totally different if they had been paying them a minimum wage and then kept part of the service charge or gave all of the service charge back. The fact that... I guess the question, though, is why does, why would we ignore everything else that happens? You know, how the money changes hands, where the checks come from, how deductions are occurred, all of that, and focus exclusively on the question of how they were reported for tax purposes, or whether they were reported for gross receipts. Why would that be the one dispositive thing that would say whether the employer took possession of the money and then gave it to the employees? And the reason it's dispositive, Your Honor, is because you have to pay someone a minimum wage. That's the law of the land. Yeah, but they got, I mean, these people were not hourly employees. They were paid by commission. So, well, I mean, why is the tax... I guess maybe you have no answer to this question. The question I'm asking is why should the tax form, about whether it's gross receipts on the restaurant's tax form, why that's dispositive no matter what else happens? Why is that dispositive? That's dispositive because basically the cascading effect, the snowball effect, is if we, if this court says that you can collect service charges and then just use it to satisfy your minimum wage requirement, that would basically invalidate, every restaurant would do that, and they would no longer be responsible for paying a minimum wage or an overtime wage. They would just say, you're not working hard enough, Susan, to pay yourself. And that's what they would do. And so you're gone because you can't earn enough money. Well, they would have to fit, I mean, they would have to fit under the exception, right? So it would have to be one and a half times the minimum wage. I mean, so they would have to fit under those exceptions, right? Correct. I mean, that's part of the criteria, is one and a half times the minimum wage. But still, my play, my idea still comes into play where it says, you're not earning enough. I'm not really sure what I would even call it. I mean, that would be a tip in the, I mean, as it was in the hospitality ventures case. They explained that a sum of money presented by a customer as a gift or gratuity in recognizing the service performed is only a tip when the amount of the gratuity are deemed solely by the customer. So that's fine. That's a tip. And that's, I guess, if you're going to call it a service charge when you change it later on behind closed doors, I'm just saying is that before I can sell you a car, I have to take title of it myself, I guess you could say. And so they have to take title of the money, the service charges that they're collecting. And that's what the IRS is doing. And I'm just confused. Why didn't they take title of it? In the record, what suggests that they didn't take title of the money? They admitted not taking, not including it on their tax returns. So that's it, though, right? I mean, as far as how the credit card was processed. I mean, correct me if I'm wrong, the servers didn't get like a separate credit card machine and run this credit card separately for the service charge versus the other, right? I mean, just went on the same money to the restaurant and the money divided out. They collected the entire bill. This actually kind of segues into exactly what we were talking about with paper chase and the issues that we ran into there. And yes, Judge Brasher, I agree with you in that, yeah, it's not really the nicest thing in the world to have to turn over your tax returns. And we understand that. And we try not to have to require that in discovery. However, what happened at the corporate rep deposition was the corporate rep who had been an accountant for more than 10 years, who was the CFO of the company, who basically said when they asked, do you include this in your gross receipts on your tax returns? And he says, I have no idea what you're talking about. And so the definition didn't change when we were asking the questions. What happened was is that they were just trying to explain it to him exactly what it was. And he was very not full of any information regarding that, I guess. But you didn't challenge the inadequacy of the corporate rep, correct? And a very good question, and one brought up by my colleague, Mr. Beckerman, is we didn't challenge that. And why didn't we challenge that at that time? Because we had requests for admissions outstanding on exactly the same issue. So just as Judge Brasher said, oh, well, you know, I don't really want to turn my tax returns over. That's kind of, you know, showing it all. You shouldn't have to do that. We put it in the request for admissions. And there were three or four different requests for admissions. And when those requests for admissions came back with answers on them, they said the term gross receipts is not, we disagree with the term gross receipts. It's ambiguous and argumentative. Did you challenge? We did challenge that. So we then went to the court and said, look, Your Honor, we need to know, we need to have these answered. And the court came back and basically said, yes, you're going to get these answered. And the way that we were going to get them answered was by taking the deposition of the paper chase gentleman. We just, let me, let me see if this is a way to, so the most that you would get out of a deposition or additional discovery, I mean, as far as helpful on this issue would be to find out that they did not include this in their gross receipts, right? If they had admitted on the. Right. If they had, if they had been to your request for admission, if they had just said admitted, we don't include it on gross receipts. That's what you want. That's a yes. That would have, that would help. So one way for us to resolve this issue without really reaching sort of the discovery separately would just be to assume that they didn't include it on their gross receipts and answer the question. I believe it is dispositive. Right, right. But I'm just saying we can, we can avoid getting into the discovery issues if we just go ahead and give you what you want and say they did not include this on their gross receipts. Absolutely. This could be a six page decision that basically says that and save everybody a lot of work. I think that would be the fair way to do it as well. And I think the cascading effect is something that this court needs to look at when writing this or deciding this is what happens if we do write a decision that says, oh, you don't have to count, put it in your gross receipts. Now, so now we're overriding some of the other courts that have said you do have to put it in their gross receipts. And just because somebody works in a club where maybe they dance or they do whatever, it doesn't make it any, any less applicable to, to the facts of this case. I mean. When you say we're overriding decisions, we're overriding district court decisions on this issue, correct? There, I mean, this, this court has a duty that I believe which this case will be cited all the way across the union. No, I understand. But you said we're overriding case law. You are referring to district court cases. Yes, I am. And of course, and you can do that. Absolutely. Yes, that was my point. Yes. And, and I, but I believe that what would happen is that there would be some IRS implications if they don't count them in their gross receipts. And I believe that that would be a cascading effect. And I think if you look at the, the Nelson brief that's been submitted to this court, you're going to find a very well reasoned and very well written analysis. He didn't seem to do that. Analysis of exactly why and what happens when we don't follow this particular bonafide commission requirement. I think that's a perfect place for you to end since you are over time. Thank you very much. Thank you, Mr. Coven. Thank you both.